NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0114n.06
Filed: February 12, 2007

No. 03-6250

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **EARL ANTHONY JAMES**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Petitioner-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **UNITED STATES OF AMERICA**, | ) | **O P I N I O N** |
| | ) | |
| *Respondent-Appellee*. | ) | |

BEFORE:    **MARTIN, BATCHELDER, McKEAGUE, Circuit Judges.**

**McKEAGUE, Circuit Judge.**  Petitioner Earl Anthony James appeals the district court's

denial of his 28 U.S.C. § 2255 motion to vacate his sentence.  For the reasons that follow, we affirm

the district court.

## I. BACKGROUND

The facts of Petitioner's offense were set forth by this court on direct review:

Earl Anthony James left his house on the evening of October 12, 1995, purportedly to check on his brother Mark.  James testified that he took the family Pontiac Grand Am because it used less gas than his pickup truck.  Although each vehicle was registered in both his wife's and his name, he testified that he rarely drove the Grand Am.  He testified that he found his brother at the Nashville Sound, a bar, where they proceeded to shoot pool and drink alcohol.

Government witnesses testified that James and a man with him became very belligerent and threatened security guards at the bar.  James disputes this, saying that he tried to calm down the other man, his brother's friend, and get him out of the bar

peacefully and quickly. A number of government witnesses testified that they heard a gunshot as James was driving out of the parking lot, and a 911 call was made reporting a gunshot in the area. James denies shooting a gun.

A police officer pulled James over because the police dispatcher had sent out a be-on-the-lookout call for the Grand Am and because James was speeding. James immediately exited his car and walked towards the officer until told to return to his car. The officer testified that James held his right hand behind his back and walked backwards when told to get back into his car. The officer testified that he saw James bend down after he reentered the Grand Am, and that he appeared to be digging under the seat. James again exited his car and walked towards the police officer; this time holding his hands out. The officer handcuffed him and placed him in the back of the squad car. When support arrived, the officers performed sobriety tests on James, which he failed. An officer inventoried the Grand Am and found a leather pistol holster between the car door and the driver's seat, and a revolver under the driver's seat. As he removed the firearm, it snagged on two baggies, which turned out to contain relatively small quantities of marijuana. One shell of the firearm had been discharged, but the police did not perform any chemical tests to determine if James or anyone else had fired the firearm recently. James testified that he had hidden the marijuana under the seat but that he was not aware of the presence of the holster or the revolver. He testified that his wife was familiar with and owned guns. Although James's wife testified before the grand jury that she did not know anything about the gun, she testified at trial that she was a gun enthusiast, and that the gun was hers.

James pleaded guilty in Tennessee state court to possession of the marijuana with intent to distribute. He claims this was part of a plea bargain in which the state agreed to drop gun possession charges. The United States then indicted James under 18 U.S.C. §§ 922(g)(1) & 924(a)(2) for being a felon in possession of a firearm. James had been convicted of a number of felonies in the past, and was on probation at the time of the incident.

At the initial federal trial in April of 1997, the jury deadlocked on conviction and the judge declared a mistrial. Upon retrial in July of 1997, James was convicted. The judge sentenced him to 292 months in prison.

*United States v. James*, No. 97-6205, 1999 U.S. App. LEXIS 2024, at *2-5 (6th Cir. Feb. 4, 1999).

On appeal, this court affirmed the district court's conviction and sentence. Two years later,

Petitioner filed the motion to vacate his sentence at issue here under the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"). Petitioner alleged a number of errors, all of which the district court construed as claims of ineffective assistance. Specifically, Petitioner claimed that counsel had not attempted to suppress the gun as the fruit of an unlawful arrest; that counsel had not objected to improper remarks in the prosecutor's closing argument; that counsel failed to object to the prosecutor's elicitation of inadmissible evidence; that counsel failed to investigate the role of federal agents in Petitioner's guilty plea proceedings in state court; and that counsel failed to object to incorrect calculation of Petitioner's sentencing guidelines range. The district court denied Petitioner's motion as to all the above claims of error.

The district court certified for appeal only the claim of ineffective assistance for failure to object to inadmissible evidence: specifically, the use of stale convictions for impeachment in violation of a pretrial order, and two hearsay documents from Petitioner's jail file. Additionally, this court granted a certificate of appealability regarding the calculation of Petitioner's sentencing range. Petitioner also continues to argue on appeal the issues of improper argument and the role of federal agents in state guilty plea proceedings. "[T]he court of appeals will not entertain any issue that lacks district court or court of appeals certification." *In re Certificates of Appealability*, 106 F.3d 1306, 1308 (6th Cir. 1997); 28 U.S.C. § 2253. Petitioner's arguments regarding the uncertified issues will not be considered.

Petitioner also attempts to argue on appeal a Fifth Amendment due process claim, on the theory that the use of his state-court possession of marijuana for resale conviction violated his rights to be free from double jeopardy and self-incrimination, and a related Sixth Amendment claim regarding the sufficiency of the indictment. These issues will not be considered by this court,

because they have not been certified; they were not raised before the district court; they were not raised on direct review, and Petitioner has not established good cause for his failure to do so; and in any case they are without merit. *Perez v. Oakland County*, 466 F.3d 416, 430 (6th Cir. 2006) ("We do not consider an argument raised for the first time on appeal unless the party shows that refusal to consider the argument would result in a miscarriage of justice."); *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 486 (1986)) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is actually innocent.") (citations omitted).

## II. FAILURE TO OBJECT TO INADMISSIBLE EVIDENCE

A claim of ineffective assistance of counsel presents a "mixed question[] of law and fact." *Mapes v. Tate*, 388 F.3d 187, 190 (6th Cir. 2004). Therefore, this court "review[s] the district court's ruling on such a claim *de novo*," while "'[a]ny findings of fact pertinent to the ineffective assistance of counsel inquiry are subject to a clearly erroneous standard of review.'" *Id.* (quoting *United States v. Jackson*, 181 F.3d 740, 744 (6th Cir. 1999)).

Ineffective assistance claims are analyzed under the test from *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires

showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. Meeting the second, "prejudice" prong requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The harmless error standard is applicable to claims of ineffective assistance, *Maurino v. Johnson*, 210 F.3d 638, 644 (6th Cir. 2000), on collateral review as well as on direct appeal. *See Murr v. United States*, 200 F.3d 895, 906 (6th Cir. 2000); *Myers v. United States*, 198 F.3d 615, 619 (6th Cir. 1999). However, reviewing courts need not undertake an independent harmless error analysis.

State court convictions are examined on collateral review to determine whether an error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also Joseph v. Coyle*, 469 F.3d 441, 464 (6th Cir. 2006). This standard does not apply to collateral review of federal-court convictions, as state-court convictions are entitled to special deference. *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also* 28 U.S.C. § 2254(e)(1). The Supreme Court has explained that the more stringent habeas standard for state-court convictions is subsumed in a prejudice standard identical to that in *Strickland*: "'a reasonable probability that, . . . [but for the error], the result of the proceeding would have been different' . . . necessarily entails the conclusion that" there was a "'substantial and injurious effect or influence in determining the jury's verdict . . . .'" *Kyles v. Whitley*, 514 U.S. 419, 435 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985) (opinion of Blackmun, J.); *Brecht*, 507 U.S. at 623). This court has

similarly held that "[n]o harmless error analysis is necessary for claims of ineffective assistance of counsel," because the less-stringent harmless error analysis is likewise subsumed in the prejudice prong of the *Strickland* analysis. *Combs v. Coyle*, 205 F.3d 269, 291 (6th Cir. 2000) (citing *Kyles*, 514 U.S. at 435-36).

Petitioner's counsel failed to object to the introduction of three pieces of evidence at trial: the fact that Petitioner was convicted in 1977 for stealing fifty to eighty firearms, introduced by the Government on cross-examination of Petitioner; a statement in the Medical Data form prepared upon Petitioner's arrest that Petitioner's "behavior suggest[ed] the risk of assault," introduced through the testimony of a jail records custodian; and a letter purportedly written by "most of" Petitioner's cell block, indicating that Petitioner "has been causing problems in the cell, and is using intimidation to take from people," introduced through the same witness. 7/3/1997 Tr. Excerpt at 50; Government Exhibit 14; 7/3/1997 Tr. Excerpt at 19.

### A. Impeachment with Stale Conviction

Petitioner contends that counsel's failure to object to this evidence entailed ineffective assistance of counsel. The questions regarding Petitioner's 1977 gun conviction violated a pretrial order that "the United States will not be allowed to use stale [more than ten-year-old] convictions for impeachment purposes" pursuant to Federal Rule of Evidence 609. Order at 3. This court on direct review held that the Government's elicitation of this evidence constituted plain error because it "was in direct contravention of the district court's pretrial order and Rule 609." 1999 U.S. App. LEXIS 2024, at *11. However, this court held that reversal was not appropriate because "James fails the prejudice prong of the plain error test." *Id.*

Similarly, the district court ruled regarding Petitioner's § 2255 motion that counsel's failure to object "does not fall within the wide range of reasonably competent assistance demanded of attorneys in criminal cases." Memorandum Opinion at 16. The Government contends on appeal that counsel's failure to object could have been trial strategy, as counsel could have decided that "rather than object, and perhaps give the jury the impression petitioner was hiding prior convictions," he would "permit[] the impeaching inquiry about the stale conviction in order" that Petitioner might "testify unequivocally that he had no convictions involving the use of guns or involving violence." Appellee's Brief at 33.

The Government's argument is unpersuasive. The failure to object to clearly inadmissible evidence of prior convictions is not shielded as "strategy" even where it is part of a carefully considered defense plan. *See Coleman v. Ohio Adult Parole Auth.*, 118 F. App'x 949, 952 (6th Cir. 2004) ("The state's argument that counsel's failure to object to the remarks as part of a conscious strategy to use the prior conviction in [the defendant's] favor does little to rebut the district court's finding of ineffective assistance, and is supported by no case."); *Lovett v. Foltz*, No. 88-1682, 1989 U.S. App. LEXIS 13295, at *11-12 (6th Cir. Sept. 5, 1989) (in case table at 884 F.2d 579) ("[W]hile 'baring the soul' may have been a reasonable defense theory, its use . . . does not excuse counsel's failure to object to what might otherwise have been inadmissible evidence. 'Strategy,' whether labeled 'baring the soul' or with some other name, is not the equivalent of 'opening the floodgates.'"). The district court was correct in ruling that "[t]his Court can conceive of no reason, other than inattentiveness, for an attorney to sit silent while a client is subjected to questioning that transgresses a court order as well as an evidentiary rule." Memorandum Opinion at 16.

However, counsel's failure to object does not entitle Petitioner to habeas relief. The Government presented significant evidence against Petitioner, including the testimony of two eyewitnesses regarding threats and the firing of a shot at the Nashville Sound, and of a police officer regarding Petitioner's furtive actions during the traffic stop. As this court held in *United States v. Scisney*, 885 F.2d 325, 327 (6th Cir. 1989), "Although 'overwhelming' might be too strong a word to describe the Government's case, it was solid enough overall, and convinces us that any error involved in the brief reference to the prior . . . conviction was harmless as a matter of law."

Moreover, although the Government improperly elicited evidence of Petitioner's 1977 conviction, evidence that Petitioner had been convicted of two counts of cocaine trafficking, had violated parole and been returned to prison, and had been convicted of introducing contraband into a jail, was properly admitted. This court held in *Charles v. Foltz*, 741 F.2d 834, 838 (6th Cir. 1984), in which two convictions were improperly elicited on cross-examination, but "at least six additional convictions" were properly before the jury, that "[i]t is . . . beyond a reasonable doubt that the two convictions elicited during cross-examination were harmless error."

**B. Elicitation of Hearsay Statements**

Similarly, counsel's failure to object to the admission of two hearsay documents from Petitioner's jail file, the Medical Data form and the letter from Petitioner's cellmates, does not entitle Petitioner to habeas relief. The district court made no express ruling as to whether counsel's failure to object to this evidence met the first requirement of the *Strickland* test, and it is unnecessary for this court to do so in the first instance, since the prejudice requirement is not met.

The Medical Data form recorded a police officer's belief that Petitioner's "behavior" at the time of his arrest "suggest[ed] the risk of assault." Though, as this court ruled on direct appeal, the Medical Data form was inadmissible hearsay, the evidence was essentially cumulative with the testimony of the arresting officer. That officer had already testified that when Petitioner was stopped, "It was kind of a tense moment. I'd already received a [be-on-the-lookout] of an altercation in Johnson City involving a weapon. I stopped a vehicle with the tag number that was given to me, and I felt a threat of a – of a gun." 7/3/1997 Tr. Excerpt at 8-9. Although the hearsay evidence "was improperly before the jury," it "was cumulative of other evidence and did not pose a reasonable possibility of prejudice to the jury's verdict." *United States v. Lartigue*, Nos. 93-5356, 93-5359, 1994 U.S. App. LEXIS 9342, at \*33 (6th Cir. Apr. 26, 1994); *see also United States v. Sollars*, 979 F.2d 1294, 1298 (8th Cir. 1992).

The letter purportedly from Petitioner's cellmates alleged that he was "using intimidation to take from people." The letter does not specify what "intimidation" means, and Petitioner's explanation that his cellmates may have been resentful because he had won several poker games was uncontroverted. 7/3/1997 Tr. Excerpt at 36. Thus, it is not clear that the hearsay statement in the letter was even unflattering to Petitioner. Even assuming that it was, in the context of the officer's testimony mentioned above and the testimony of Nashville Sound security guards that Petitioner was "cursing us out pretty good," that Petitioner or his companion stated that "they'd shoot every one of" the security guards, that Petitioner made two passes by the guards in his car, and that he fired a shot as he drove away, any evidence of Petitioner's disagreements with cellmates was harmless.

Petitioner's claims of ineffective assistance fail because he cannot satisfy the prejudice prong of *Strickland*.

### III. CALCULATION OF SENTENCING GUIDELINES

This Court reviews for clear error a district court's findings of fact for purposes of its Sentencing Guidelines calculations; conclusions of law, however, are reviewed *de novo*. *United States v. Galloway*, 439 F.3d 320, 322 (6th Cir. 2006).

Petitioner argues that his Sentencing Guidelines were calculated incorrectly. Specifically, he asserts that the sentencing court

> incorrectly increased the defendant's offense level from 24 to 34 under [U.S.S.G. §] 2K2.1(b)(5) (6 points) and again under [§] 4B1.4(b)(3)(A) (4 points) then increased the defendant's criminal history from IV to VI under [§] 4B2.4(c)(2) all based on the same possession by the defendant of 33 grams of marijuana at the time of his arrest.

Appellant's Brief at 7. As an initial matter, this court reviews sentencing calculations to determine that the Guidelines were applied *correctly*. That the single fact of possession of marijuana may legally qualify a defendant for several sentencing enhancements under the Guidelines does not entail a basis for relief. *See* 18 U.S.C. § 3742(a).

### A. Calculation of Offense Level

The sentencing court applied the 1996 version of the federal Sentencing Guidelines.[1] The court increased Petitioner's offense level four points, rather than six, as Petitioner contends, pursuant to U.S.S.G. § 2K2.1(b)(5). That Guideline provides, "If the defendant used or possessed any firearm

---

[1]Hereinafter, the content of the Guidelines is taken from the version effective November 1, 1996.

or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels." U.S.S.G. § 2K2.1(b)(5). Petitioner contends that his conduct does not qualify as use or possession of a firearm "in connection with another felony offense," in this case, his state conviction for possession of marijuana for resale.

The district court correctly followed this court's opinion in *United States v. Hardin*, 248 F.3d 489 (6th Cir. 2001), in ruling that the sentencing court properly assessed four points under § 2K2.1(b)(5). In *Hardin*, it was undisputed that

> the cocaine and the gun were in the room with [the defendant] at the time of his arrest. . . . Defendant contends that in order to prove that he used the gun "in connection with" a drug offense, the Government must present additional evidence – perhaps that he had both the gun and the cocaine on his person, or that he was holding the gun while selling the cocaine, or that he confessed that he was using the gun to protect the cocaine. We do not read the term "in connection with" to require additional evidence beyond that presented here.

*Id.* at 495. Thus, while it is true, as Petitioner contends, that the Government must prove the possession of a firearm in connection with another felony by a preponderance of the evidence, this simply requires that the possession of the firearm "cannot be the result of accident or coincidence. . . . Instead, the gun at least must 'facilitate, or have the potential of facilitating,' the drug trafficking offense." *Id.* at 497-98 (quoting *United States v. Regans*, 125 F.3d 685, 686 (8th Cir. 1997) (quoting *Smith v. United States*, 508 U.S. 223, 238 (1993))) (internal quotations omitted).

The *Hardin* court held that the presence of the defendant, the cocaine, and the gun, which was registered in the name of the defendant's wife, in the same room at the same time, was sufficient to establish that the firearm possession was "in connection with" the felony cocaine possession. *Id.*

at 490, 496. In this case, Petitioner, the marijuana, and the gun were in the same car at the same time, and the gun and the marijuana were actually next to each other hidden under the same car seat. Though, as Petitioner contends, the quantities of drugs in *Hardin* and the cases from other circuits which it cites were larger than the quantity of marijuana at issue here, in view of Petitioner's state court conviction for "possession of marijuana for resale," this distinction is not relevant.

Even if Petitioner's offense level had not been increased four points under § 2K2.1(b)(5), his offense level would still have been 34 under § 4B1.4(b)(3)(A) because of his status as an Armed Career Criminal. Under § 4B1.4(b)(3)(A), if a defendant is designated an Armed Career Criminal, and he "used or possessed the firearm or ammunition in connection with a crime of violence or controlled substance offense, as defined in [§] 4B1.2(1)," his offense level is 34. A controlled substance offense is "an offense under a federal or state law prohibiting . . . the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense" it. U.S.S.G. § 4B1.2(2). Marijuana is a controlled substance under both Tennessee and federal law. Tenn. Code Ann. § 39-17-415(1); 21 U.S.C. § 812 Schedule I(c)(17). Petitioner pled guilty to possession of marijuana for resale in violation of Tenn. Code Ann. § 39-17-417(a)(4).[2] Thus, the district court correctly ruled that Petitioner's conduct falls within the ambit of § 4B1.4(b)(3)(A).

**B. Designation as an Armed Career Criminal**

---

[2]Petitioner contends on appeal that "[t]here was no evidence whatsoever that [he] was selling or intended to sell any marijuana or that he had the 33 grams of marijuana for any other purpose than personal use." Appellant's Brief at 9. Petitioner's state guilty plea is to the contrary, and he may not use the instant habeas petition to effect a collateral attack on his conviction under Tennessee law.

Petitioner additionally argues that he was incorrectly designated an Armed Career Criminal under 18 U.S.C. § 924(e), which provides increased penalties for a felon in possession of a firearm who "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1); *see also* U.S.S.G. § 4B1.4(a). The Government offered five prior offenses at sentencing to establish that Petitioner is an Armed Career Criminal:

1) possession of marijuana with intent to distribute, Virginia state court, conviction 1983;
2) sale of Schedule II drugs, Tennessee state court, committed May 24, 1984;
3) sale of Schedule II drugs, Tennessee state court, committed June 10, 1984;
4) introducing contraband into prison, Tennessee state court, conviction 1987; and,
5) third-degree burglary, Tennessee state court, conviction 1977.

The district court below ruled that at least three of these prior convictions, the second, third, and fifth, qualify as violent felonies or serious drug offenses. Petitioner concedes that the *first* offense counts toward Armed Career Criminal status, but contends that the second and third offenses are not "separate and distinct criminal episodes" and that therefore only one can be counted. He also contends that his 1977 offense, the fifth above, does not fall under the definition of burglary for federal sentencing purposes. Therefore, he claims, he does not have the three predicate offenses required for Armed Career Criminal status.

For purposes of designating an Armed Career Criminal, a "violent felony" is "any crime punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another," or "is burglary . . . or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 924(e)(2)(B). A "serious drug offense" includes "an offense under State law, involving

manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled

substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by

law." 18 U.S.C. § 924(e)(2)(A)(ii).

Petitioner is correct in concluding that the first of the five above offenses qualifies as a

serious drug offense. He was convicted in 1983 of possession with intent to distribute 1.89 ounces

of marijuana, which is a Class 5 felony under Virginia law. Va. Code Ann. § 18.2-248.1(a)(2).

Class 5 felonies are punishable by up to ten years' incarceration. Va. Code Ann. § 18.2-10(e).

Marijuana is a controlled substance under both Virginia and federal law. *Donahue v.*

*Commonwealth*, 300 S.E.2d 768, 769 (Va. 1983); 21 U.S.C. § 812 Schedule I(c)(17).

The second and third offenses above are also serious drug offenses. The sale of a "Schedule

II controlled substance" in violation of Tenn. Code Ann. § 39-17-417(a)(3), (c) is at least a Class C

felony, and is punishable by up to 10 years' incarceration or more.[3] Therefore, as Petitioner does not

---

[3]In *United States v. Morton*, 17 F.3d 911, 915 (6th Cir. 1994), this court held that the maximum sentence prescribed by law for a prior drug offense counted under § 924(e) is determined based on the sentencing laws of the relevant state at the time of the Armed Career Criminal sentencing – thus, in this case, 1995, rather than 1985. Under Tennessee's "comprehensive penal and sentencing reform legislation," which took effect in 1989, the difference between statutory minimum and maximum sentences is divided into "ranges" based on the offender's criminal record. Tenn. Code Ann. §§ 40-35-112, 40-35-101 Sentencing Comm'n Cmts. The *Morton* court thus held, "At the time defendant was being sentenced in this case, the State of Tennessee did not consider trafficking less than .5 grams, when the defendant has no more than one prior felony conviction, serious enough to impose a ten-year sentence." 17 F.3d at 915. In this case, by contrast, Petitioner already had more than one prior felony conviction in 1985; he was considered an "especially aggravated offender" based on his prior record and was sentenced to 14 years' incarceration for the two sales of Schedule II drugs, the sentences to run concurrently. "Especially aggravated offender" status triggers a "Range II" sentence under Tennessee's current system. *Wallen v. State*, 863 S.W.2d 34, 36 (Tenn. 1993); *State v. Cook*, 816 S.W.2d 322, 323 (Tenn. 1991). For a Class C felony, Range II is six to ten years. Tenn. Code Ann. § 40-35-112(b)(3). For a Class B felony (for sale of more

dispute, it qualifies as a serious drug offense under § 924(e)(2)(A)(ii). *See United States v. Roach*, 958 F.2d 679, 683 (6th Cir. 1992) (counting the sale of schedule II controlled substances in violation of Tennessee law as a prior conviction for a serious drug offense under 18 U.S.C. § 924(e)(1)).

However, Petitioner argues that his two 1984 distribution offenses cannot be counted separately. This court reviews *de novo* the question of whether offenses were committed on occasions different from one another under § 924(e)(1). *United States v. Hill*, 440 F.3d 292, 295 (6th Cir. 2006). Offenses are committed on different occasions if they "are not 'components of a single act of criminality.'" *United States v. Anderson*, 76 F.3d 685, 691 (6th Cir. 1996) (quoting *United States v. Blackwood*, 913 F.2d 139, 145 (4th Cir. 1990)).

Petitioner sold cocaine to a police informant in Tennessee on May 24 and June 10 of 1984. He contends that these sales were not on occasions different from one another because the sales were to the same informant, one warrant was issued and one arrest made for both, both convictions arose from the same proceeding, and the sentences were served concurrently. As an initial matter, a "defendant's receipt of concurrent sentences for . . . [multiple] prior felony drug convictions does not mean that the convictions were part of the same criminal episode." *United States v. Anderson*, 76 F.3d 685, 691 (6th Cir. 1996).

In *United States v. Brady*, 988 F.2d 664, 666 (6th Cir. 2002) (*en banc*), this court held that offenses were committed on different occasions although they occurred approximately forty-five

---

than .5 grams), Range II is twelve to twenty years. *Id.* § 40-35-112(b)(2). Thus, under the rule in *Morton*, the maximum sentence prescribed by Tennessee law for sale of Schedule II drugs at the time of sentencing for Petitioner's current felon in possession offense was ten years or more.

minutes apart on the same evening, and the police clearly were unable to arrest the defendant for the first offense before he committed the second. Thus, the fact that Petitioner was not arrested between the two drug sales does not mean that the two sales formed a single episode. The rest of Petitioner's arguments were all raised and rejected in *Roach*. This court held in that case that sales of drugs to the same undercover agent, just over two weeks apart, for which the defendant was indicted on the same day and later convicted on the same day, were separate criminal episodes for § 924(e)(1) purposes. 958 F.2d at 683-84. Likewise, Petitioner's two 1984 sales here were not part of a single act of criminality, and the district court properly counted both toward Petitioner's designation as a Armed Career Criminal.

Thus, Petitioner has at least three qualifying prior offenses. Therefore, this court need not reach the question of whether Petitioner's conviction for third-degree burglary under Tennessee law qualifies as a violent felony for purposes of Armed Career Criminal status. The sentencing court properly determined that Petitioner qualified for an offense level of 34 and a criminal history category of VI. U.S.S.G. § 4B1.4(b)(3)(A), (c)(2). Although the district court used different offenses to find that Petitioner had three prior felonies, the district court correctly ruled that Petitioner's sentencing guidelines were properly calculated. Insofar as Petitioner's claims regarding his sentencing calculations are to be construed as allegations that counsel was ineffective for failing to object at sentencing, they are also not meritorious. Counsel cannot be ineffective for failing to object to what was properly done. *United States v. Sanders*, 404 F.3d 980, 986 (6th Cir. 2005).

## IV. CONCLUSION

For these reasons, the denial of Petitioner's § 2255 motion was proper, and the district court's

decision is **AFFIRMED**.