NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0031n.06

No. 09-5128

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jan 12, 2011**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| TIMOTHY BERKEY, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: BATCHELDER, SUTTON and McKEAGUE, Circuit Judges.

SUTTON, Circuit Judge. After Timothy Berkey pled guilty to being a felon in possession of a firearm, the district court sentenced him to 41 months in prison. He challenges a four-level enhancement for possessing the firearm in connection with felony marijuana possession and contends that his sentence is substantively unreasonable. We affirm.

I.

On December 11, 2007, when Berkey stepped out of his house, he had marijuana and a glass pipe in his pants pocket and a 9mm handgun in the pocket of his winter coat. Hours later, police pulled him over for speeding. The marijuana was still in his pocket, the since-used pipe was in the driver's side door, and the gun was in the coat lying on the back seat behind him. A federal grand

jury indicted Berkey for possessing the firearm, *see* 18 U.S.C. § 922(g), and he pled guilty to the charge.

At sentencing, the government sought a four-level enhancement on the theory that Berkey "possessed [a] firearm . . . in connection with another felony offense," U.S.S.G. § 2K2.1(b)(6), namely "simple possession" of marijuana under state law, *see* Tenn. Code Ann. § 39-17-418(a), (e). Berkey's counsel argued that the proximity of the gun and the marijuana was "coincidental" and that the amount of drugs—16.58 grams—was relatively small, suggesting Berkey had no need "to protect the stash" with a gun. R.48 at 11–12. The court discussed the issue with both parties at length and eventually gave the enhancement. The total offense level (15) and criminal history (Category VI) yielded a guidelines range of 41 to 51 months.

Defense counsel requested a below-guidelines sentence, emphasizing Berkey's desire to care for his two sons and suggesting that his criminal history overstated his past conduct. The court initially said that Berkey "seem[ed] to be better than his criminal history would suggest" and thought the guidelines range might be "a little too high." R.48 at 38–39. The court also addressed "the need for uniformity": "It seems to me that I've sentenced people similarly situated to Mr. Berkey at a lower level than I'm looking at sentencing Mr. Berkey." *Id.* at 40–41. The government responded by pointing to Berkey's multiple prior drug convictions and the apparent absence of any deterrent effect from his prior punishments. "[T]he solution," the court concluded, "is to go to the low end of the Guidelines rather than to go below the Guidelines when I really have no intellectual basis—I

have no handle to go below the Guidelines in this case." *Id.* at 54. The court sentenced Berkey to 41 months.

II.

In considering whether the district court abused its discretion by imposing an "unreasonable" sentence, *Rita v. United States*, 551 U.S. 338, 341 (2007); *see also Gall v. United States*, 552 U.S. 38, 41 (2007), our first task is to "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *Gall*, 552 U.S. at 51. If the "sentencing decision is procedurally sound," our second task is to "consider the substantive reasonableness of the sentence." *Id*. Berkey raises arguments on both fronts—procedural and substantive—but none is availing.

A.

Berkey claims that the district court misapplied § 2K2.1(b)(6), which requires a four-level enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." The enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1 cmt. n.14(A); *see also United States v. Angel*, 576 F.3d 318, 320 (6th Cir. 2009). The government bears the burden of proving that the connection between the firearm and the other felony was not "merely coincidental," *United States v. Ennenga*, 263 F.3d 499, 503 (6th Cir. 2001), that the firearm "served some purpose" in relation to the other offense, such as "embolden[ing] the defendant" in committing it, *United States v. Carter*,

355 F.3d 920, 925 (6th Cir. 2004). The firearm "need not be actively used" in the other offense. *Angel*, 576 F.3d at 320.

Berkey's own testimony supplied all of the facts that the district court needed to conclude that the firearm "emboldened the defendant during the felonious conduct." *Carter*, 355 F.3d at 925. He acknowledged the accuracy of the facts presented in the presentence report, including that he "claimed ownership of the marijuana and the firearm" and that he "smoked two pipes of marijuana" in the car. PSR ¶ 6. He acknowledged that he had the drugs and pipe in one pocket and the gun in another when he left his house. Taken together, these facts allowed the court to reach the conclusion it did: that "the firearm ha[d] the potential of . . . facilitating the felony offense," R.48 at 25, and that Berkey thus possessed the firearm "in connection with" possession of marijuana, U.S.S.G. § 2K2.1(b)(6).

The court need not probe Berkey's psyche to determine whether and how possession of the firearm affected his decision to possess the marijuana. It is enough that it had the "potential" to promote or facilitate the drug offense, U.S.S.G. § 2K2.1 cmt. n.14(A); *Angel*, 576 F.3d at 320, and that is a reasonable inference here. Of course, the enhancement is not automatic whenever a firearm and drugs are found together, *United States v. Hardin*, 248 F.3d 489, 501 (6th Cir. 2001), but the facts here go beyond mere proximity, particularly since Berkey took the gun and drugs out in public and used the drugs in public while keeping the gun nearby. The district court justifiably concluded that Berkey possessed the gun "in connection with" possessing the marijuana.

In similar settings, we have come to the same conclusion before, and so have other circuits. In *United States v. Clay*, 346 F.3d 173 (6th Cir. 2003), we upheld an enhancement where the defendant carried a firearm and 1.1 grams of crack cocaine. *Id.* at 175, 179. And in *United States v. Rogers*, 333 F. App'x 975, 976 (6th Cir. 2009), we upheld an enhancement based on a violation of the same Tennessee possession statute at issue here. "When a drug user chooses to carry his illegal drugs out into public with a firearm," as the Eighth Circuit has observed, "there are many ways in which the weapon can facilitate the drug offense and . . . embolden the offender." *United States v. Fuentes Torres*, 529 F.3d 825, 827 (8th Cir. 2008); *United States v. Regans*, 125 F.3d 685, 687 (8th Cir. 1997). So also says the Fourth Circuit: "A firearm can embolden the actor to possess . . . drugs . . . even in small amounts," particularly when the defendant takes the firearm and drugs together out in public. *United States v. Jenkins*, 566 F.3d 160, 163 (4th Cir. 2009).

None of Berkey's challenges to the district court's ruling delivers. He argues that he engaged in what amounts to a mere "misdemeanor," which "became a felony due only to his status in the criminal justice system." Berkey Br. 10. He is right about one thing. Simple possession under Tennessee law ordinarily is a misdemeanor, *see* Tenn. Code Ann. § 39-17-418(a), and becomes a felony only if "the person has two (2) or more prior convictions," *id.* § 39-17-418(e). But Berkey has his sequencing wrong. What made his conduct felonious—his "two (2) or more prior convictions"—came about before he engaged in the conduct and before he possessed the firearm. The status of the offender or the victim *often* turns otherwise innocent or less culpable conduct into a felony. That is the point of status-related offenses.

Berkey also complains about the lack of "evidence upon which the Court could reasonably infer that distribution, trafficking, or some type of drug transaction had occurred or was likely to occur while the gun was possessed." Berkey Br. 12. Section 2K2.1(b)(6), however, is not limited to drug trafficking crimes, but embraces "any federal, state, or local offense, other than the . . . firearms possession . . . offense, punishable by imprisonment for a term exceeding one year." U.S.S.G. § 2K2.1 cmt. n.14(C). It is true that, in applying § 2K2.1(b)(6) to drug trafficking, the government's burden is lower, as it must show only that "a firearm [was] found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." *Id.* at n.14(B). But this is a special rule for drug trafficking cases, nothing more. It does not foreclose the application of § 2K2.1(b)(6) where the firearm had the potential to facilitate drug possession. *See, e.g.*, *Clay*, 346 F.3d at 179.

Berkey also latches onto the district court's statement that "if you actually look at the real world aspect of it, the gun was along." R.48 at 39. "[I]f the district court was correct in stating that the gun was merely 'along,'" he argues, "then its presence could only be coincidental to the possession of marijuana." Berkey Br. 13. A fairer reading of the district court's statement is that § 2K2.1(b)(6) applies in this instance due to the firearm's *potential* to facilitate the possession offense, not due to the fact that the firearm facilitated it. That is enough. *See Angel*, 576 F.3d at 320. It was reasonable for the district court to conclude that Berkey brought the gun "along" precisely so that he would feel safer carrying and using drugs in public.

Berkey, lastly, argues that the district court impermissibly "shifted the burden of proof." Berkey Br. 14. But he acknowledged that he not only left the house with drugs in one pocket and

a firearm in another but also kept the gun near him as he used the marijuana in public. It is reasonable to infer from these circumstances that he possessed the firearm "in connection with" the drug crime. Drawing inferences from the record does not amount to shifting the burden of proof.

B.

Berkey contends that his sentence was substantively unreasonable because the district court mistakenly thought it lacked the authority to vary from the guidelines range. But the court recognized it "ha[d] the discretion to issue a sentence that varies from the Guidelines," R.48 at 42, and Berkey has not rebutted the presumption of reasonableness applicable to within-guidelines sentences, *see United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008).

Berkey adds that the district court's initial statements seemed to acknowledge that the guidelines range was "a little too high." R.48 at 38. After he made these statements, however, the judge worked his way through the factors enumerated in 18 U.S.C. § 3553(a), *see Gall*, 552 U.S. at 51, and concluded that a bottom-of-the-range sentence was appropriate. The district court, in short, did just what it was supposed to do: It let the § 3553(a) factors, rather than any subjective hunch or feeling, drive the sentencing decision. The following excerpt from the sentencing transcripts proves the point:

> So, what I expressed earlier is a concern about whether . . . a Guideline Sentence promotes uniformity. Ordinarily, one does, because people similarly situated fall into that category. But somehow, I don't know why, I keep getting the feeling in looking at all of the sentences that I've imposed, this case doesn't really—the thing runs a little high despite the low range of the . . . Guidelines. And I'm not sure I have a real intellectual basis for that, except Mr. Berkey just has always presented himself to me

> as a better person than his criminal history shows. I think the solution to that is to go to the low end of the Guidelines rather than go below the Guidelines when I really have no intellectual basis—I have no handle to go below the Guidelines in this case.
>
> In analyzing the 3553 [factors] out loud, as I've just done . . . [i]t appears that really all of the factors point to a Guideline sentence. The seriousness of the offense. The extent of the Criminal History. The need to protect the public. The need to deter. Opportunities Mr. Berkey might have in prison. . . . And the need for uniformity. I really don't have anything to counter with, which is what Congress asked me to consider, except this vague feeling that the thing is a little too high . . . .
>
> So, I guess the proper means of approaching it is to go to the low end of the Guidelines and impose a sentence of 41 months.

R.48 at 53–55. Based on "its ring-side perspective" and "experience over time in sentencing other individuals," *United States v. Poynter*, 495 F.3d 349, 352 (6th Cir. 2007), the district court at most acknowledged that the appropriateness of a guidelines sentence was a close call. But after considering the § 3553(a) factors, the court concluded that the guidelines range accurately captured this case, a conclusion that fell well within its considerable discretion. We do not reverse sentencing decisions just because they are difficult. In fact, given the district court's "greater familiarity with[] the individual case and the individual defendant before him," *Rita*, 551 U.S. at 357, we typically do the opposite.

III.

For these reasons, we affirm.