*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0352P (6th Cir.)
File Name: 03a0352p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

      *v.*

COREY CLAY,
      *Defendant-Appellant.*

No. 02-1362

———————

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 01-90014—Marianne O. Battani, District Judge.

Argued: September 12, 2003

Decided and Filed: October 2, 2003

Before: MERRITT, MOORE, and GILMAN, Circuit
Judges.

———————

### COUNSEL

**ARGUED:** Natasha D. Thompson, FEDERAL PUBLIC
DEFENDERS OFFICE, Detroit, Michigan, for Appellant.
Patricia C. Uetz, ASSISTANT UNITED STATES
ATTORNEY, Grand Rapids, Michigan, for Appellee.
**ON BRIEF:** Rita Chastang, FEDERAL PUBLIC
DEFENDERS OFFICE, Detroit, Michigan, for Appellant.

Patricia C. Uetz, ASSISTANT UNITED STATES
ATTORNEY, Grand Rapids, Michigan, for Appellee.

———————

### OPINION

———————

RONALD LEE GILMAN, Circuit Judge. Corey Clay was
arrested as part of a drug investigation in Detroit, Michigan.
He was charged in a two-count indictment with possession of
a controlled substance and for being a felon in possession of
a firearm. During his trial, Clay twice moved to dismiss the
charges pursuant to Rule 29 of the Federal Rules of Criminal
Procedure. These motions were denied.

After Clay was convicted by a jury on both counts, the
district court sentenced him to 63 months of imprisonment
and two years of supervised release. Clay contends on appeal
that (1) the evidence was insufficient to establish his guilt,
(2) the district court erred in apprising the jury pool of his
prior drug conviction, and (3) he should not have received a
sentencing enhancement. For the reasons set forth below, we
**AFFIRM** the judgment of the district court.

### I. BACKGROUND

On March 3, 2001, three police officers were investigating
the possibility of drug dealing at an uninhabited apartment in
Detroit, Michigan. They walked up to the open front door,
where they observed suspicious activity inside. The officers
noticed two individuals in the apartment. One of the
individuals, later identified as Clay, ran toward the back of
the apartment and tossed a plastic bag on the floor.

While one officer apprehended Clay, another officer
retrieved the bag, which contained an off-white lumpy
material that one of the officers later identified as crack
cocaine. The third officer searched Clay and found a firearm

and $575 on his person. A laboratory report showed that the material weighed 1.1 grams and contained cocaine.

Clay was indicted on one count of possession of "a controlled substance, to wit: approximately 1.6 grams of a mixture of substance containing crack cocaine, also known as cocaine base," in violation of 21 U.S.C. § 844(a), and on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). (No explanation is found in the record regarding the discrepancy between the 1.1 grams stated in the laboratory report and the 1.6 grams alleged in the indictment.) The government soon thereafter formally notified Clay that, upon conviction under § 844(a), it would rely upon a prior conviction "as a basis for a sentence to increased punishment under 21 U.S.C. § 841(b)(1)(A)." The reference to § 841(b)(1)(A) was apparently mistaken, however, because the amount of illegal drugs allegedly possessed was less than required to sustain a charge under that section. The prior conviction identified in the information was later used as the basis for an enhanced sentence in connection with the § 844(a) offense.

Clay's trial commenced in November of 2001. Prior to jury selection, the parties stipulated that he was a convicted felon for purposes of the count relating to being a felon in possession of a firearm. The district court therefore ruled that it would not allow any reference to the previous conviction during trial. Nonetheless, when the court read the superseding indictment to the prospective jurors, it inadvertently disclosed to the jury pool that Clay had been previously convicted of a narcotics offense. Clay's counsel objected, but did not request a new jury pool. The district court overruled the objection.

A jury was selected and the trial proceeded. At the end of the government's proof, Clay moved for the case to be dismissed pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The district court denied the motion. Clay made another Rule 29 motion at the close of his proof,

which the court again denied. A guilty verdict was returned on both counts.

The United States Probation Office calculated the Sentencing Guidelines range to be 63 to 78 months. This included a four-level increase in the base offense level because Clay "possessed the firearm in connection with another felony offense, namely, possession of cocaine base." Clay filed an objection to the Presentence Report and a motion for reconsideration of his Rule 29 motion.

At the sentencing hearing, the district court denied the motion for reconsideration and found that the four-level enhancement was applicable. Clay was sentenced to concurrent terms of imprisonment of 63 months on Count One and 24 months on Count Two. The court also sentenced Clay to two years of supervised release.

## II. ANALYSIS

### A. Rule 29 motions

"A Rule 29 motion is a challenge to the sufficiency of the evidence. [W]hen the sufficiency of the evidence is challenged on appeal, the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime . . . ." *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996) (emphasis and alteration in original) (internal quotation marks omitted). "[T]his court may conclude a conviction is supported by sufficient evidence even though the circumstantial evidence does not remove every reasonable hypothesis except that of guilt." *Id.* (internal quotation marks omitted).

Clay argues that his Rule 29 motions should have been granted because the government did not prove, as it alleged in the indictment, that Clay possessed "1.6 grams of a mixture or substance containing crack cocaine, also known as cocaine

base . . . ." Instead, Clay points out that the City of Detroit's laboratory report, which was stipulated to by Clay and the government and was entered into evidence, concluded that "[t]he material weighed 1.10 grams and contained COCAINE." (Emphasis in the original.) The government responds by arguing that the evidence adduced at trial reflected the fact that the bag contained crack cocaine and that, in any event, the penalty imposed was no greater than the maximum allowable period of incarceration for the possession of 1.1 grams of powder cocaine. It also notes that the City of Detroit's laboratory reports do not distinguish between powder cocaine and crack cocaine, calling both simply "cocaine."

No distinction is made between crack and powder cocaine in 21 U.S.C. § 844(a) either. Instead, this section states that "[i]t shall be unlawful for any person knowingly or intentionally to possess a controlled substance . . . ." Thus, whether Clay possessed crack or powder cocaine, we conclude that there was sufficient evidence for a rational trier of fact to find that Clay violated 21 U.S.C. § 844(a). The district court, therefore, did not err in denying Clay's Rule 29 motions.

## B.   Reading of indictment to jury pool

Clay also contends that the panel should reverse his conviction because the district court read the entire indictment to the jury pool, which included a reference to his prior drug conviction. According to Clay, this constituted a "structural error" warranting reversal. *See United States v. Monger*, 185 F.3d 574, 578 (6th Cir. 1999) (stating that "structural errors, . . . [which] infect[] the entire trial process, and necessarily render[] a trial fundamentally unfair . . . require [the court] to reverse" a criminal conviction regardless of the strength of the evidence against the defendant). *Monger* held that "the district court's failure to instruct the jury on the lesser included offense of simple possession was an intrinsically harmful structural error which requires us to reverse." *Id.*

(noting that such an error "does not warrant the use of the harmless-error rule"). Although the government admits that the district court in the present case erred in reading the entire indictment, it denies that the error was "structural" and instead maintains that it was harmless.

This court has applied a harmless-error analysis in similar situations. *See Myers v. United States*, 198 F.3d 615, 619 (6th Cir. 1999) (holding that the district court's reading to the jury the nature of the defendant's prior offenses was harmless error); *United States v. McFerren*, No. 96-5458, 1998 WL 180514, at *3-4 (6th Cir. Apr. 8, 1998) (per curiam) (applying the harmless-error standard to the defendant's claim that the district court erred when it read to the jury the indictment that contained references to his prior convictions); *see also United States v. Turner*, 565 F.2d 539, 541 (8th Cir. 1977) (per curiam) ("[O]nce the trial court had been informed of the stipulation of counsel, he should have read the indictment to the jury without reference to the nature of the felony conviction. However, we do not feel that this error was unduly prejudicial in light of the substantial evidence of Turner's guilt.").

We conclude that *Myers* is more applicable to the present case than *Monger*. The district court's inadvertent mistake in disclosing the nature of Clay's prior conviction to the jury pool was not an error of the same magnitude as failing to instruct the jury on a lesser included offense. In addition, the evidence against Clay was so overwhelming that it is more probable than not that the error did not materially affect the verdict. *See United States v. Daniel*, 134 F.3d 1259, 1262 (6th Cir. 1998) ("[I]t is well settled that an error which is not of constitutional dimension is harmless unless it is more probable than not that the error materially affected the verdict.") (internal quotation marks omitted). Clay was apprehended in an uninhabited apartment under suspicious circumstances. When the officers entered, he ran to the back of the apartment and threw a plastic bag containing cocaine on the floor. A large sum of cash and a firearm were found

on his person. In light of this evidence, the district court's error in mistakenly reading the nature of Clay's prior drug conviction to the jury pool was harmless.

## C.  Sentencing enhancement

Clay's final contention is that the district court erred when it enhanced his sentence pursuant to the Sentencing Guidelines for possessing a firearm during the commission of a felony drug offense. "[The] district court's finding that a defendant possessed a firearm during a drug crime is a factual finding subject to the clearly erroneous standard of review." *United States v. Darwich*, 337 F.3d 645, 664 (6th Cir. 2003) (internal quotation marks omitted). "A finding of fact will only be clearly erroneous when, although there may be some evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (internal quotation marks omitted).

We first note that the government's superceding information mistakenly references 18 U.S.C. § 841(b)(1)(A), under which Clay was never charged. This calls into question the government's compliance with the formal notice requirement of 21 U.S.C. § 851, which states:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for such person) stating in writing the previous convictions to be relied upon . . . .

Clay, however, failed to raise this issue either in the district court or on appeal. He has therefore forfeited any claim of

governmental error. *See United States v. Dodson*, 288 F.3d 153, 162 (5th Cir. 2002) (holding that, by failing to object, the defendant forfeited his right to complain of the government's failure to inform him of its intent to seek an enhanced sentence upon conviction of a § 844 offense).

"[B]efore an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (internal quotation marks omitted). Although the government's notice erroneously cited to § 841(b)(1)(A), it did so immediately after indicating that the sentence enhancement would be sought in connection with "the charge in Count Two of the Indictment in this case," which specifies a § 844(a) offense. Additionally, the superceding information correctly identified the prior conviction upon which the government would rely in seeking the enhancement in connection with the § 844(a) offense, and Clay stipulated to the validity of that conviction. We conclude, therefore, that the erroneous citation to § 841(b)(1)(A) did not seriously affect the fairness of Clay's trial, and we proceed to address the merits of his argument concerning the sentencing enhancement.

United States Sentencing Guidelines § 2K2.1(b)(5) provides that a defendant's base offense level should be increased by four levels "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." "This section can only apply if the Government establishes by a preponderance of the evidence that the defendant possessed or used a gun in connection with another felony." *United States v. Hardin*, 248 F.3d 489, 495 (6th Cir. 2001).

Under the Controlled Substances Act, a drug-related offense punishable by a term of imprisonment greater than one year under any federal law is a felony offense. 21 U.S.C. § 802(44). Conviction for simple possession under § 844(a) of the Controlled Substances Act that follows "a prior conviction for any drug, narcotic, or chemical[] offense chargeable under the law of any State" is punishable by a maximum term of imprisonment of two years. Because Clay had a prior conviction for a narcotics offense under Michigan law, his violation of § 844(a) qualified as a felony.

The government maintains that the evidentiary burden shifts to the defendant once the government shows that the defendant possessed or used a gun in connection with another felony. Citing *United States v. McGhee*, 882 F.2d 1095 (6th Cir. 1989), the government contends that once it makes this showing, the defendant must "prove that it was clearly improbable that the firearm was connected to the other offense." *McGhee*, however, involved a sentencing enhancement pursuant to § 2D1.1(b) of the Sentencing Guidelines, which makes it inapposite to the present case. Rather than seek the two-level enhancement provided for in § 2D1.1(b), the government sought to apply the four-level enhancement under § 2K2.1(b)(5). This case is therefore controlled by *Hardin*, not *McGhee*. In *Hardin*, this court stated that the "clearly improbable" requirement does not apply in a case where the defendant's sentence was enhanced pursuant to § 2K2.1(b)(5), noting that "§ 2D1.1 applies a burden-shifting component that is not present in § 2K2.1(b)(5)." 248 F.3d at 496. The full burden of proof on the particular enhancement sought therefore remained with the government.

Keeping in mind that "the presence of drugs in a home under a firearm conviction does not *ipso facto* support application of a § 2K2.1(b)(5) enhancement," *id.* at 501, the district court must examine the specific facts of the case before it to determine if the government established by a preponderance of the evidence that the defendant possessed

or used a gun in connection with another felony. Although the "possession of firearms that is merely coincidental to the underlying felony offense is insufficient to support the application of § 2K2.1," this court has expressly adopted the "fortress theory, which concludes that a sufficient connection is established if it reasonably appears that the firearms found . . . are to be used to protect the drugs or otherwise facilitate a drug transaction." *United States v. Ennenga*, 263 F.3d 499, 503 (6th Cir. 2001) (internal quotation marks omitted).

Clay was apprehended in an uninhabited apartment late at night with a bag of cocaine and a large amount of cash on his person. He testified that he was in the apartment to have his hair braided by a woman whom he had met "on the streets," although the alleged hairstylist was not in the building. Finally, Clay was carrying a firearm. *See Hardin*, 248 F.3d at 499 (noting that firearms "are 'tools of the trade' in drug transactions"). Based upon this set of facts, the district court did not clearly err when it found that the government had proven by a preponderance of the evidence that Sentencing Guidelines § 2K2.1(b)(5) was satisfied.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.