**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Stephen WASHINGTON, Defendant–Appellant.**

**No. 02–3627.**

United States Court of Appeals, Sixth Circuit.

Nov. 24, 2003.

---

Gary L. Spartis, U.S. Attorney's Office, Columbus, OH, for Plaintiff–Appellee.

Charles A. McKinney, Columbus, OH, for Defendant–Appellant.

Before BATCHELDER and COLE, Circuit Judges;  and HOOD,* District Judge.

## OPINION

COLE, Circuit Judge.

Defendant–Appellant Stephen C. Washington appeals his conviction and sentence on federal drug and weapons charges.  He argues that: (1) several of his convictions were insufficiently supported by the evidentiary record;  and (2) his sentence was improperly enhanced on the basis of his supervisory role in the drug conspiracy.  For the reasons that follow, we affirm the judgment of the district court.

### I.  FACTUAL & PROCEDURAL HISTORY

On October 14, 1997, as part of a 154–count indictment covering eight individuals, Washington was charged with one count of conspiracy to distribute and possess with intent to distribute crack cocaine, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii);

---

* The Honorable Joseph M. Hood, United States District Court for the Eastern District of Kentucky, sitting by designation.

two counts of possession with intent to distribute crack cocaine, *id.;* three counts of distribution of crack cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 841(b)(1)(B)(iii); and one count of use or carrying of a firearm during a drug-trafficking crime, 18 U.S.C. § 924(c). At trial, several of Washington's associates testified pursuant to agreements with the Government. Lee Gill, the admitted ringleader of the organization known as the "G.I. Boys" (G.I. standing for Gary, Indiana, the hometown of most of the organization's members), testified that the G.I. Boys distributed cocaine in both crack and powder form–Gill supplied the cocaine to Washington in quantities ranging from one-eighth to one-half of a kilogram, four to five times per month. Gill further testified that he considered Washington to be his "right-hand man," and Washington's status as Gill's approximate coequal was also acknowledged at trial by G.I. Boys' members Anthony Williams (Washington was Gill's "right-hand man") and Mark Hunter (Washington and Gill were "together"). Washington disputed their testimony, asserting that his involvement in the distribution of cocaine was the result of violent threats from Gill.

The evidence further established the use of firearms by the G.I. Boys generally, and by Washington specifically. Gill and Williams testified that all members of the G.I. Boys carried guns–whether or not they were carrying drugs–for protection against, as Gill explained, "[o]ther drug sellers, other people we had a beef with in the city, Detroit boys, Columbus boys," and also that, because of their reputation for violent retaliation, the G.I. Boys were rarely challenged by rivals. Gill, Williams, as well as Angelique McKinley, Washington's girlfriend, and William Welch, the government's confidential informant, also testified that Washington carried a gun most or all of the time.

Finally, witnesses testified about several specific drug transactions, two of which are relevant to Washington's appeal. First, both Gill and Welch testified about a transaction that took place on July 31, 1996–also captured in part on videotape–in which Gill gave Washington an ounce of cocaine. An obstruction, however, prevented the videotape from capturing the exchange of the drugs. Second, Welch testified about a transaction between Washington and undercover DEA Agent Rodney Russell, which took place on August 7, 1996 at Welch's apartment. After Russell left the apartment, Washington immediately pulled a gun from his pants pocket.

On September 20, 2001, Washington was convicted on all seven counts. On May 23, 2002, the district court sentenced Washington within the range specified by the the U.S. Sentencing Guidelines, and also imposed a three-level sentencing enhancement after concluding that Washington played a supervisory role in the offense. On May 31, 2002, Washington filed a timely notice of appeal.

## II. ANALYSIS

### A. *Sufficiency of the Evidence*

Washington asserts that there was insufficient evidence to support his convictions: (1) for carrying a firearm in relation to a drug transaction, pursuant to 18 U.S.C. § 924(c); and (2) for his role in the July 31, 1996 drug transaction. When reviewing a challenge to the sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

### 1. Carrying a firearm

The Government contends that Washington waived his challenge to his conviction under 18 U.S.C. § 924(c) because he failed to move, pursuant to FED. R.CRIM. P. 29, for a judgment of acquittal on the weapons charges. Although the record indicates that Washington objected at sentencing to the additional sentence pursuant to the conviction for carrying a firearm, Rule 29 requires that the motion for acquittal be made within seven days of the jury's discharge, and Washington did not so move. Because Washington failed to preserve this sufficiency claim, we review it for plain error. *See United States v. Clay*, 346 F.3d 173, 178 (6th Cir.2003).

■■■ Even if the objection had been properly preserved, we conclude that there was sufficient evidence to convict Washington of this charge. 18 U.S.C. § 924(c) provides for an additional five years of imprisonment to "any person who, during and in relation to any crime of violence or drug trafficking crime ... for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." The Government concedes that Washington did not "use" the firearm during the transaction in question, but asserts that he "carried" it within the meaning of the statute. To prove this assertion, the evidence must show that "the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Smith v. United States*, 508 U.S. 223, 238, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993).

Viewed in the light most favorable to the Government, the evidence established that Washington carried the gun in relation to the drug transaction. First, Welch testified that Washington removed a gun from his pants pocket immediately following a drug transaction that he completed on August 7, 1996. Second, the testimony of Gill and Williams allows for the inference that the G.I. Boys–and therefore by extension Washington–carried guns to protect themselves, and Williams specifically testified that when he sold drugs, he stayed armed so as to protect his drugs and money. Given that the G.I. Boys functioned as a coherent whole, it would have been reasonable for a jury to conclude that all members of the G.I. Boys–including Washington–had the same motivation. Indeed, we have held that evidence more inferential than this supports a conviction under § 924(c). *See United States v. Walls*, 293 F.3d 959, 969 (6th Cir.2002) ("The government ... offered evidence that individuals engaged in making and selling [drugs] often use firearms to protect themselves.").

Washington makes two arguments, neither of which we find persuasive. First, Washington argues that because the evidence indicated that he carried a gun at all times, not just when dealing drugs, there was no proof that he actually carried his gun in furtherance of the drug transactions. This argument, however, does not *disprove* that Washington carried the gun to protect himself during drug sales; it demonstrates only that additional evidence beyond mere possession was and is required to convict Washington–evidence that was provided by the aforementioned testimony of Gill and Williams. Second, Washington argues that because the evidence revealed that the G.I. Boys relied on a more general reputation of violence to protect themselves from rival drug merchants, it also cannot be the case that members such as Washington would have carried their weapons for this purpose. However, the two strategies need not be mutually exclusive; one might reasonably conclude that the former was the result of a willingness to engage in the latter.

Thus, although a jury reasonably could have accepted Washington's theory at tri-

al, there was also sufficient evidence for the jury to conclude that Washington carried a weapon in a manner proscribed by § 924(c).

### 2. Transaction of June 30, 1996

■ Washington contends that there was insufficient evidence to convict him on Count 23 of the Indictment, which charged him with possessing with intent to distribute over five grams of crack cocaine on July 31, 1996. The Government again correctly notes that Washington waived this argument by not moving for a Rule 29 judgment of acquittal, and that as a result the proper standard of review is plain error. In any event, both Gill and Welch testified that Washington took possession of the drugs in the transaction that was videotaped on July 31, 1996. Viewing the evidence in the light most favorable to the Government, we must credit the testimony offered by Gill and Welch. Upon doing so, we easily conclude that there was sufficient evidence to support a conviction under Count 23.

### B. *Sentencing Enhancement*

■ Finally, Washington challenges the three-level enhancement imposed by the district court pursuant to U.S. Sentencing Guidelines § 3B1.1 for his supervisory role in the conspiracy. Although the Supreme Court's decision in *Buford v. United States,* 532 U.S. 59, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001), has cast some uncertainty as to whether we review the district court's application of the facts to the Guidelines under a *de novo* or deferential standard, *see United States v. Solorio,* 337 F.3d 580, 600 (6th Cir.2003), we need not reach this question here because even under a *de novo* standard of review, the district court properly enhanced Washington's sentence.

There was considerable testimony supporting the conclusion that Washington played a senior role in the G.I. Boys. U.S.S.G. § 3B1.1(b), under which Washington's enhancement fell, provides for a three-level enhancement if "the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." That the G.I. Boys had at least five members, as required by the Guidelines, is not in dispute. Furthermore, although the conspiracy must contain at least five participants, a defendant need only have supervised one of them. *United States v. Gort–DiDonato,* 109 F.3d 318, 321 (6th Cir.1997). Finally, Washington was considered by various members of the G.I. Boys to hold a leadership role: Gill, the undisputed leader of the G.I. Boys, testified that Washington was "about equal" to him in the hierarchy; Anthony Williams testified that Washington was Gill's "right-hand man"; Welch testified that Washington was right below Gill in the organization's hierarchy. Washington also supplied many of the G.I. Boys with their drugs, a factor that we have relied on in the past to justify § 3B1.1 enhancements. *See United States v. Taylor,* 248 F.3d 506, 516 (6th Cir.2001) (pointing to the fact that defendant possessed quantities of drugs typical of those possessed by a "mid-level drug distributor").

In sum, because the evidence established that Washington was the G.I. Boys' second-in-command, the enhancement of Washington's sentence under § 3B1.1 was proper.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.