**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0101n.06

No. 09-5068

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | **Feb 10, 2011** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Western |
| ALVIN MCKENZIE, JR., | ) | District of Tennessee |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before:     BOGGS and MCKEAGUE, Circuit Judges; and QUIST, District Judge[*]

BOGGS, Circuit Judge.  Defendant Alvin McKenzie appeals his fifty-seven-month sentence for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  McKenzie challenges the district court's application of a four-level sentence enhancement for possession of a firearm "in connection with" another felony offense, marijuana possession.  Under §2K2.1(b)(6) of the United States Sentencing Guidelines Manual ("USSG"), such a connection is established if the government proves by a preponderance of the evidence that the firearm had the potential to facilitate the additional offense.  Here, we find that the government failed to meet this burden, as the only link between the gun and the small amount of marijuana McKenzie possessed was their simultaneous presence in his car.  We therefore vacate the district court's sentence and remand for re-sentencing.

---

[*] The Hon. Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

I

The underlying facts in this case are not disputed. On April 9, 2007, McKenzie, accompanied by an unknown passenger, was pulled over by a Memphis police officer for driving without a seatbelt and with an illegible temporary license tag. The officer observed a bag of marijuana on the arm rest of the driver-side door and saw McKenzie reach several times between his seat and the car's center console.

McKenzie got out of the car at the officer's request, while his passenger fled. McKenzie informed the officer that he had hidden a gun between the driver's seat and the center console. He claimed he had the gun for protection because he had been fired upon earlier that day. A vehicle search revealed a loaded Pietro Beretta 7.65-caliber pistol. The officer also recovered a bag containing 1.1 grams of marijuana. McKenzie was advised of his rights and arrested. A criminal history search uncovered a previous felony conviction. On August 27, 2008, McKenzie pled guilty to one count of being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

The pre-sentence report ("PSR") assigned McKenzie an initial base offense level of 20. It then applied a four-level enhancement, pursuant to §2K2.1(b)(6), for possession of a firearm in connection with another felony offense: felony possession of marijuana. The PSR explained that, under Tennessee law, possession of a controlled substance is a felony when a defendant has "two or more prior convictions" for similar offenses. McKenzie had two prior adult convictions for possession of a controlled substance. After a three-level reduction for acceptance of responsibility, the PSR assigned McKenzie a total offense level of 21. McKenzie's criminal history category was

IV. This yielded an advisory Guidelines range of fifty-seven to seventy-one months of imprisonment.

At sentencing, McKenzie objected to the four-level enhancement, arguing that there was no connection between the marijuana possession and the firearm. He argued that the small amount of marijuana was clearly meant for personal use and explained that he was carrying the gun for personal protection because he had been shot at earlier that day. The prosecutor conceded that there was no evidence McKenzie was engaged in drug trafficking, but contended that, because possessing drugs in any amount is "a dangerous business," the simultaneous presence of the gun and the drugs in McKenzie's car was sufficient to connect the firearm to the drug offense.

The district court found that under Tennessee Code Annotated § 39-17-418, McKenzie's marijuana possession would be considered a felony, given his two prior convictions for drug possession. Looking to the Guidelines commentary, the court noted that, for the enhancement to apply, the firearm must have "had the potential of facilitating" the drug offense. *See* USSG §2K2.1, comment. (n.14(A)). The court concluded that because "the firearm and the marijuana were in close proximity to each other[,] . . . . the firearm in this case did have the potential of facilitating another felony offense." The court then sentenced McKenzie to the low end of the Guidelines range. McKenzie filed this timely appeal.

## II

This court reviews a sentencing decision for procedural and substantive reasonableness. *See Gall v. United States*, 552 U.S. 38 (2007). The former includes review for "procedural error in the calculation of the guideline range." *United States v. Bartee*, 529 F.3d 357, 358 (6th Cir. 2008).

Although we review factual determinations made during sentencing for clear error, *United States v. Webb*, 616 F.3d 605, 609 (2010), we review legal conclusions regarding the application of the Sentencing Guidelines de novo, *United States v. Hover*, 293 F.3d 930, 933 (6th Cir. 2002). Thus, we review de novo the question of whether a four-level enhancement was appropriate under §2K2.1(b)(6) given the facts in this case.

III

The Sentencing Guidelines instruct a court to increase a defendant's base offense level by four levels "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." USSG §2K2.1(b)(6). McKenzie need not have actually been charged with drug possession for the marijuana possession to constitute an additional felony offense. *See id*. §2K2.1, comment. (n.14(C)) ("'Another felony offense' . . . means any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."). But for the enhancement to apply, the government must "establish[ ], by a preponderance of the evidence, a *nexus* between" the felonious drug possession and the firearm. *United States v. Bullock*, 526 F.3d 312, 317 (6th Cir. 2008) (quoting *United States v. Burns*, 498 F.3d 578, 580 (6th Cir. 2007) (emphasis added)).

In 2006, the Sentencing Commission clarified that, when the additional felony offense involves *drug trafficking*, the sentencing enhancement applies whenever "a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia," because "the presence of the firearm has the potential of facilitating another felony offense." USSG §2K2.1, comment. (n.14(B)). In other cases, however, the enhancement applies only "if the firearm or ammunition

- 4 -

facilitated, or had the potential of facilitating, another felony offense." *Id.* §2K2.1, comment. (n.14(A)). The contrast between these two sections of the commentary indicates that, while close proximity between a firearm and drugs will suffice to justify the enhancement when an offender is engaged in drug trafficking, in other cases the enhancement applies only if the government can establish that the firearm actually or potentially *facilitated* that offense. This circuit's case law confirms that, while proximity may be "indicative of a connection," the government cannot always rely on proximity alone to establish a nexus. *United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009) (noting that "proximity may not be dispositive"). Rather, "the defendant's firearm possession needs to reduce, or have the potential of reducing, the difficulty of completing the other offense." *United States v. Richardson*, 510 F.3d 622, 629 (6th Cir. 2007) (McKeague, J., concurring).

In analyzing whether firearm possession is "in connection with" a drug felony, the Sixth Circuit has adopted the "fortress theory." Under that theory, a nexus between the firearm and the drug felony exists "if it appears that the firearms . . . are to used to protect the drugs or otherwise facilitate a drug transaction," or "if the firearm had some emboldening role" in the drug offense. *Angel*, 576 F.3d at 321 (quoting *United States v. Henry*, 878 F.2d 937, 944 (6th Cir. 1989)). The government relies on the fortress theory in this case, arguing that the firearm allowed McKenzie to "protect" his bag of marijuana and "emboldened" him to carry it in public. The government's brief argues that "one can reasonably surmise that but for the firearm, the Defendant would not have felt safe enough to venture into public with his marijuana."

Determining whether possession of a firearm actually or potentially facilitated a drug offense involves a fact-specific inquiry. Cases in which this court has applied the fortress theory have

involved drug transactions, the use of firearms to protect a valuable stash of drugs, or some indication that a firearm was used to keep the defendant safe while using or transporting drugs. *See, e.g.*, *United States v. Rogers*, 333 F. App'x 975, 976-77 (6th Cir. 2009) (unpublished) (enhancement warranted where defendant carried gun to a drug transaction); *United States v. White*, 144 F. App'x 486, 487 (6th Cir. 2009) (unpublished) (defendant apprehended with gun and .3 grams of cocaine in house "often used by others for selling drugs"); *James v. United States*, 217 F. App'x 431, 438 (6th Cir. 2007) (unpublished) (gun found in proximity to 33 grams of marijuana meant for resale); *United States v. Burns*, 498 F.3d 578, 580 (6th Cir. 2007) ("[P]olice found the firearm in close proximity to drugs and drug paraphernalia shortly after conducting a controlled buy at the residence."); *Richardson*, 510 F.3d at 627 (gun was found in proximity to "a large quantity of marijuana and digital scales"); *United States v. Clay*, 346 F.3d 173, 175 (6th Cir. 2003) (defendant apprehended in uninhabited apartment late at night with firearm, $575 in cash, and 1.6 grams of crack); *United States v. Hardin*, 248 F.3d 489, 500 (6th Cir. 2001) (gun located near a "large stash of cocaine" for sale); *United States v. Ennenga*, 263 F.3d 499, 503-04 (6th Cir. 2001) (defendant "holed up" in basement apartment containing firearms and several dozen marijuana plants and protected by an alarm system).

Under the circumstances at hand, however, the government has not proven by a preponderance of the evidence that McKenzie's firearm had the potential to facilitate his marijuana possession. We first note that, in this case, there was no evidence that McKenzie was engaged in drug trafficking. There was no evidence as to where the marijuana came from, and the amount was too small to support an inference of trafficking. Second, although the "fortress theory" cases indicate

that, under some circumstances, a firearm can facilitate mere drug possession, this case involved a

very small amount of marijuana that was clearly meant for McKenzie's personal use, not a valuable

quantity like those involved in *Richardson*, *Hardin*, and *Ennenga*. Indeed, possession of the 1.1

grams of marijuana found in McKenzie's vehicle would normally constitute a misdemeanor. *See*

Tennessee Code Annotated §§ 39-17-401 et seq. Only McKenzie's previous convictions led the

PSR to conclude that in his case possession of even this small amount would constitute a felony.

Even so, the street value of the marijuana was minimal.[1] We also believe that the government's

argument that McKenzie needed the Beretta to "embolden" him to carry a few dollars worth of pot

in public is somewhat implausible on its face—many people carry small amounts of pot without a

firearm. According to the PSR, McKenzie himself had been arrested before for smoking a joint in

public, and he had no firearm on his person on that occasion. Finally, although McKenzie told the

police he was carrying the gun for protection, the facts suggest that he feared for his *life*, not that

someone would steal a baggie of pot from his car.

On nearly identical facts, the Fifth Circuit recently rejected the argument that a defendant's

possession of a gun "emboldened" him to possess or served to "protect" the small amount of drugs

found in his car. *United States v. Jeffries*, 587 F.3d 690, 695 (5th Cir. 2009) (firearm and single

---

[1]The record does not contain evidence of the actual value of the marijuana, but previous cases and news articles indicate that 1.1 grams of marijuana was likely worth $2 to $15, depending on its quality. *See United States v. Jiminez*, 564 F.3d 1280, 1283 (11th Cir. 2009) (117 pounds of packaged marijuana worth approximately $350,000, or $6.59 per gram); *United States v. Toliver*, 374 Fed. App'x 655, 656 (7th Cir. 2010) (unpublished) (fifteen pounds of marijuana worth $10,000, or $1.47 per gram); Chris Morris, *As Medical Marijuana Proliferates, Pot Prices Decline Nationwide*, CNBC.com, Dec. 7, 2010, www.cnbc.com/id/40533630 (listing prices from $161 to $452 per ounce, or $5.68 to $15.94 per gram).

"rock" of crack cocaine found in a vehicle). That court explained, "the evidence that would allow us to draw those conclusions must be something more than the simultaneous possession of a small quantity of drugs and a gun in the same vehicle standing alone." *Ibid.* Similarly, here there simply is no evidence apart from mere proximity to connect the presence of the firearm in McKenzie's car with his possession of 1.1 grams of marijuana. The Sentencing Commission has made it clear that, in felonies that do not involve drug trafficking, proximity alone is not sufficient. *See* USSG §2K2.1, comment. (n.14). To rely solely on proximity to establish the required connection in this case, as the district court seemed to do, would render the distinction in the Guidelines commentary between drug trafficking and other felonies meaningless. Absent at least some additional connection, therefore, the application of the sentencing enhancement was improper.

IV

The government has failed to prove, by a preponderance of the evidence, that McKenzie possessed a firearm "in connection with" his possession of marijuana. The district court therefore improperly applied a four-level enhancement to his sentence. Miscalculation of a Guidelines range constitutes a procedural error. *Bartee*, 529 F.3d at 358. We therefore VACATE McKenzie's sentence and REMAND his case for re-sentencing.

**McKEAGUE, Circuit Judge, dissenting.** While the majority correctly cites the controlling precedent as established by this court, I believe that it has improperly applied it to the facts of this case. Accordingly, I respectfully dissent from the majority's opinion, and I would affirm the district court's application of the four-level enhancement under USSG § 2K2.1(b)(6).

Although the majority cites to cases in which application of the enhancement has been upheld in situations involving simple possession rather than a drug trafficking offense, it concludes that the facts here do not permit application of the enhancement to McKenzie. Yet, it is difficult to find a principled distinction between those cited cases and the instant case. For example, the majority cites *United States v. White*, 144 F. App'x 486 (6th Cir. 2005) and specifically notes that the defendant was apprehended with a gun, a small quantity of cocaine, and in a "house 'often used by others for selling drugs.'" While this court noted the defendant's location when he was apprehended in its factual recitation, this specific factor was not controlling in the decision to affirm the district court's application of the enhancement. Rather, this factor was mentioned in the presentence report ("PSR") to explain that the defendant could not be held accountable for another handgun found in the house, because "there was no evidence that the defendant was aware of the this gun, as the house was often used by others for selling drugs." *Id.* at 487. This court merely quoted the PSR to describe the underlying facts of the case. In the actual analysis of the defendant's claim, this court explained that "[b]ecause the defendant admitted at his plea hearing that he possessed the unloaded .22 caliber firearm and the .3 grams of cocaine found or seen near him, all *facts* necessary to support application of the enhancement discussed in § 2K2.1(b)(5) of the guidelines were established in this case without

need for 'judicial determination.'" *Id.* at 488. The court then explained its rationale for upholding

the application of the enhancement:

> Despite admitting that he possessed both a firearm (albeit unloaded) and .3 grams of cocaine, White argues that the § 2K2.1(b)(5) enhancement cannot properly be applied to this situation because the record contains insufficient evidence that the gun was used "in connection with" the Michigan state law felony of possession of cocaine. The defendant, citing *United States v. Hardin,* 248 F.3d 489, 495 (6th Cir.2001), and *United States v. Clay,* 346 F.3d 173, 179 (6th Cir.2003), insists that the mere "presence of drugs in a home does not *ipso facto* support the application of a § 2K2.1(b)(5) conviction."
>
> In making the statement referenced by White, however, the court in *Hardin* was discussing the hypothetical situation "where a defendant arrested at his residence has an unloaded hunting rifle in the closet." *Hardin,* 248 F.3d at 501. In contrast, White was not in his own residence and, although his gun was unloaded, he had it within his reach, presumably to give the impression that he was willing to use the weapon should anyone attempt to interfere with his possession or use of the illegal narcotics at the site. Thus, the appellate record indicates that the district court did not err in its application of § 2K2.1(b)(5) to the determination of the defendant's sentence.

*Id.* at 489. Thus, while this court noted that White was not in his own residence, it did not focus on

or even mention the fact that it was a house where drugs were often sold. Rather, the opinion

emphasized the fact that White had the gun in reach to give the impression that he would use it to

defend his drug stash, if necessary, from anyone else in the residence who sought to interfere with

his possession of those drugs. This, according to the court, was sufficient to find by a preponderance

of the evidence that White possessed the gun in connection with his possession of the cocaine.

The majority also cites to *United States v. Clay*, 346 F.3d 173 (6th Cir. 2003), noting that the

defendant was apprehended with a firearm, 1.6 grams of crack, and "$575 in cash." *Id.* at 179.

Again, while the court in *Clay* noted this factor and, unlike *White*, did so in the context of upholding

the district court's application of the enhancement, it was only one of a number of factors cited by

the court.  There is no indication that this particular fact was controlling.  The court specifically

stated:

> Clay was apprehended in an uninhabited apartment late at night with a bag of cocaine
> and a large amount of cash on his person.  He testified that he was in the apartment
> to have his hair braided by a woman whom he had met "on the streets," although the
> alleged hairstylist was not in the building. Finally, Clay was carrying a firearm. *See
> Hardin,*248 F.3d at 499 (noting that firearms "are 'tools of the trade' in drug
> transactions"). Based upon this set of facts, the district court did not clearly err when
> it found that the government had proven by a preponderance of the evidence that
> Sentencing Guidelines § 2K2.1(b)(5) was satisfied.

*Id.*  In fact, despite the presence of the cash on Clay's person, he was only charged with and

convicted of possession of cocaine base, not with any drug trafficking offense.  *Id.* at 175–76.  And,

like the defendant in the instant case, the quantity of drugs was small enough that the possession

charge only became a felony because of Clay's prior conviction for a narcotics offense under

Michigan law.  *Id.* at 179.  Also, much like in *White*, the court specifically noted that Clay was in

a public place with both a gun and drugs on his person, and further had provided an explanation for

his presence that did not appear to be plausible on the basis of the facts he gave.  *Id.*

In a more recent case, this court has again found that simple possession is sufficient to uphold

application of the four-level enhancement.  In *United States v. Berkey*, No. 09-5128, 2011 WL

108307 (6th Cir. Jan. 12, 2010), a panel of this court affirmed the district court's application of the

enhancement where Berkey had 16.58 grams of marijuana and a 9mm handgun in his winter coat

pocket.  *Id.* at *1–3.  This court explained:

> Berkey's own testimony supplied all of the facts that the district court needed to
> conclude that the firearm "emboldened the defendant during the felonious conduct."
> *Carter*, 355 F.3d at 925.  He acknowledged the accuracy of the facts presented in the
> presentence report, including that he "claimed ownership of the marijuana and the

firearm" and that he "smoked two pipes of marijuana" in the car. PSR ¶ 6. He acknowledged that he had the drugs and pipe in one pocket and the gun in another when he left his house. Taken together, these facts allowed the court to reach the conclusion it did: that "the firearm ha[d] the potential of . . . facilitating the felony offense," R.48 at 25, and that Berkey thus possessed the firearm "in connection with" possession of marijuana, U.S.S.G. § 2K2.1(b)(6).

*Id.* at *2. The court added that it "need not probe Berkey's psyche to determine whether and how possession of the firearm affected his decision to possess the marijuana," because it was "enough that it had the 'potential' to promote or facilitate the drug offense," which was "a reasonable inference" in that case. *Id.*

Thus, this court has upheld application on the enhancement for simple possession of user quantities of drugs, where the gun and drugs are in close proximity, and the defendant is in a public place. Our sister circuits have also come to the same conclusion in factually similar cases. In *United States v. Jenkins*, 566 F.3d 160 (4th Cir. 2009), the Fourth Circuit affirmed application of the four-level enhancement where Jenkins was found by officers, who were responding to a call of shots fired, on a public street with a firearm containing one spent round and one live round of ammunition, and 0.29 grams of cocaine base. *Id.* at 162. The court explained that it was "clear that the possession of a firearm can facilitate a simple drug possession offense," because the "firearm can embolden the actor to possess the drugs or provide the actor protection for himself and his drugs, which are likely to be personally valuable even in small amounts." *Id.* at 163; *see also id.* (stating that "when a drug user chooses to carry his illegal drugs out into public with a firearm, there are many ways in which the weapon can facilitate the drug offense and dangerously embolden the offender") (quoting *United States v. Regans*, 125 F.3d 685, 687 (8th Cir. 1997)). The court then

determined that sufficient evidence supported the district court's finding that the firearm facilitated Jenkins's possession. *Id.* at 164. The court pointed out that Jenkins "took the revolver and cocaine onto a public street, near where a gun had recently been fired, close to midnight," which suggested "that there was a heightened need for protection and that the firearm emboldened Jenkins." *Id.* Additionally, Jenkins had the revolver "on his person," it was loaded, and was "accessible and ready for use," further suggesting it was there for protection or to embolden Jenkins. *Id.* According to the court, this was sufficient evidence to find that the simultaneous possession went beyond coincidence.[2] *Id.; see also United States v. Simmons*, 291 F. App'x 992, 993–96 (11th Cir. 2008) (affirming application of the enhancement where Simmons was found on a public street by officers carrying a firearm and a small plastic bag of marijuana, noting that the arresting officer had testified that sometimes individuals would pull a gun on someone trying to rob them of a small amount of marijuana, and that the marijuana was found in the same pocket as the firearm, which established a link between the two and "which might indicate that the gun was possessed for the purpose of protecting the drugs from theft"); *Regans*, 125 F.3d at 685–87 (holding that application of the four-level enhancement was appropriate where Regans, a passenger in a car stopped for a traffic violation, was found with a pistol in his waistband and 0.29 grams of heroin that he admitted possessing for personal use, explaining that "the drug felon has the ability to use the weapon in connection with his drug offense").

---

[2]Unlike this circuit, the Fourth Circuit used the clear error standard of review.

The majority correctly notes that one circuit has held differently. In *United States v. Jeffries*, 587 F.3d 690 (5th Cir. 2009), Jeffries was stopped while driving in his car, and officers found a firearm on the driver's seat and a rock of crack cocaine on the floor behind the driver's seat, which he denied belonged to him. *Id.* at 691. Nonetheless, the Fifth Circuit acknowledged that the potential for facilitation could be present in simple possession cases, but found in that case that the application of the enhancement was inappropriate because the district court had made no finding of facilitation and the facts were "too sparse" to find that the gun emboldened Jeffries. *Id.* at 695.

Here, it is difficult to conclude that the application should not apply, as the facts cannot be described as "sparse," as in *Jeffries*. Though the majority makes much of the fact that the quantity of drugs was small, this fact alone does not make McKenzie's possession of the gun in connection with his possession of the drugs "implausible on its face," as the majority concludes. *See White*, 144 F. App'x at 489 (upholding application of the enhancement for possession of 0.3 grams of cocaine). The facts of this case contradict the majority's conclusion that there "simply is no evidence apart from mere proximity to connect the presence of the firearm in McKenzie's car with his possession of 1.1 grams of marijuana." According to the PSR, McKenzie was driving on a public road with a firearm in the console to his right and a small bag of marijuana on the arm rest of the door to his left. Thus, the firearm was in close proximity to the drugs and to McKenzie, and both were in plain view. Also significant is that, unlike the unloaded firearm in *White* (which was sufficient for the court to find that White intended to protect his 0.3 grams of cocaine), McKenzie's firearm was both loaded and easily accessible for protection. *Cf. United States v. Coleman*, 627 F.3d 205, 212, 214 (6th Cir. 2010) (holding that the four-level enhancement was applicable to Coleman where he possessed drugs

and only ammunition without a gun, because "the ammunition emboldened Coleman in the knowledge that he was one step closer to having a fully-loaded firearm to protect himself and his illegal drugs, and the ammunition potentially served notice to potential buyers that Coleman was a step closer to having a fully-loaded firearm"). McKenzie even admitted that he had the gun for protection; he reported to the probation officer that he feared for his life and had been shot at earlier in the day, and that is why he had the gun. Although the majority attempts to dismiss this fact as irrelevant, because McKenzie "feared for his *life*, not that someone would steal a baggie of pot from his car," it seems unreasonable that McKenzie would use the firearm to protect himself, but not the drugs he possessed. Additionally, as other courts have held, it is reasonable to find that carrying a firearm would embolden an individual's possession of even a small quantity of drugs, because the drugs are personally valuable to a user of such substances. Moreover, McKenzie was driving with another individual when he was stopped by police, further supporting the conclusion that the firearm emboldened his possession and potentially facilitated that possession by preventing theft of the marijuana. The majority points out that, according to the PSR, McKenzie had been arrested previously for smoking a joint in public (in actuality, McKenzie was in the driver's seat of a vehicle located at a park), but had no firearm on him at the time. However, McKenzie had been arrested prior to that occasion with seven rocks of crack cocaine and a loaded Smith & Wesson .38 caliber revolver. Additionally, the PSR also states that, when McKenzie was pulled over in this case, officers noted "an odor of marijuana emanating from the vehicle." Although the PSR does not state whether any additional evidence of marijuana use specifically by McKenzie was found, it is worthy

of note, in light of the majority's argument and the relatively small quantity found in the plastic bag when the vehicle was pulled over.

Ultimately, there is not an overabundance of evidence here, but that is not what is required. The firearm need not actually be used in the commission of the felony; it must only have "the potential to promote another felony offense." *United States v. Angel*, 576 F.3d 318, 320 (6th Cir. 2009) (quoting *United States v. Heighton*, 272 F. App'x 469, 472 (6th Cir. 2008)). And, "demonstrating this nexus [under § 2K2.1(b)(6) between the gun and the drugs] is not a particularly onerous burden." *United States v. Davis*, 372 F. App'x 628, 629 (6th Cir. 2010). Although the government must satisfy the preponderance standard, "this simply requires that the possession of the firearm cannot be the result of accident or coincidence." *James v. United States*, 217 F. App'x 431, 438 (6th Cir. 2007). All that the government must show is that a preponderance of the evidence demonstrates the firearm's potential for facilitation of the marijuana possession, and on the basis of the facts in this case, the government has met its burden. Contrary to the majority's conclusion, I believe that it is evident that "the facts here go beyond mere proximity." *Berkey*, 2011 WL 108307, at *2. As a result, I would find that the district court did not err in applying the four-level enhancement to McKenzie's base offense level, and I would affirm McKenzie's sentence.