McKEAGUE, Circuit Judge,
dissenting.
While the majority correctly cites the controlling precedent as established by this court, I believe that it has improperly applied it to the facts of this case. Accordingly, I respectfully dissent from the majority’s opinion, and I would affirm the district court’s application of the four-level enhancement under USSG § 2K2.1(b)(6).
Although the majority cites to cases in which application of the enhancement has been upheld in situations involving simple possession rather than a drug trafficking offense, it concludes that the facts here do not permit application of the enhancement to McKenzie. Yet, it is difficult to find a principled distinction between those cited cases and the instant case. For example, the majority cites United States v. White, 144 Fed.Appx. 486 (6th Cir.2005) and specifically notes that the defendant was apprehended with a gun, a small quantity of cocaine, and in a “house ‘often used by others for selling drugs.’” While this court noted the defendant’s location when he was apprehended in its factual recitation, this specific factor was not controlling in the decision to affirm the district court’s application of the enhancement. Rather, this factor was mentioned in the presen-tence report (“PSR”) to explain that the defendant could not be held accountable for another handgun found in the house, because “there was no evidence that the defendant was aware of the this gun, as the house was often used by others for selling drugs.” Id. at 487. This court merely quoted the PSR to describe the underlying facts of the case. In the actual analysis of the defendant’s claim, this court explained that “[bjecause the defendant *948 admitted at his plea hearing that he possessed the unloaded .22 caliber firearm and the .3 grams of cocaine found or seen near him, all facts necessary to support application of the enhancement discussed in § 2K2.1(b)(5) of the guidelines were established in this case without need for ‘judicial determination.’ ” Id. at 488. The court then explained its rationale for upholding the application of the enhancement:
Despite admitting that he possessed both a firearm (albeit unloaded) and .3 grams of cocaine, White argues that the § 2K2.1(b)(5) enhancement cannot properly be applied to this situation because the record contains insufficient evidence that the gun was used “in connection with” the Michigan state law felony of possession of cocaine. The defendant, citing United States v. Hardin, 248 F.3d 489, 495 (6th Cir.2001), and United States v. Clay, 346 F.3d 173, 179 (6th Cir.2003), insists that the mere “presence of drugs in a home does not ipso facto support the application of a § 2K2.1(b)(5) conviction.”
In making the statement referenced by White, however, the court in Hardin was discussing the hypothetical situation “where a defendant arrested at his residence has an unloaded hunting rifle in the closet.” Hardin, 248 F.3d at 501. In contrast, White was not in his own residence and, although his gun was unloaded, he had it within his reach, presumably to give the impression that he was willing to use the weapon should anyone attempt to interfere with his possession or use of the illegal narcotics at the site. Thus, the appellate record indicates that the district court did not err in its application of § 2K2.1(b)(5) to the determination of the defendant’s sentence.
Id. at 489. Thus, while this court noted that White was not in his own residence, it did not focus on or even mention the fact that it was a house where drugs were often sold. Rather, the opinion emphasized the fact that White had the gun in reach to give the impression that he would use it to defend his drug stash, if necessary, from anyone else in the residence who sought to interfere with his possession of those drugs. This, according to the court, was sufficient to find by a preponderance of the evidence that White possessed the gun in connection with his possession of the cocaine.
The majority also cites to United States v. Clay, 346 F.3d 173 (6th Cir.2003), noting that the defendant was apprehended with a firearm, 1.6 grams of crack, and “$575 in cash.” Id. at 179. Again, while the court in Clay noted this factor and, unlike White, did so in the context of upholding the district court’s application of the enhancement, it was only one of a number of factors cited by the court. There is no indication that this particular fact was controlling. The court specifically stated:
Clay was apprehended in an uninhabited apartment late at night with a bag of cocaine and a large amount of cash on his person. He testified that he was in the apartment to have his hair braided by a woman whom he had met “on the streets,” although the alleged hairstylist was not in the building. Finally, Clay was carrying a firearm. See Hardin, 248 F.3d at 499 (noting that firearms “are ‘tools of the trade’ in drug transactions”). Based upon this set of facts, the district court did not clearly err when it found that the government had proven by a preponderance of the evidence that Sentencing Guidelines § 2K2.1(b)(5) was satisfied.
Id. In fact, despite the presence of the cash on Clay’s person, he was only charged with and convicted of possession of cocaine base, not with any drug trafficking offense. Id. at 175-76. And, like the defendant in *949 the instant case, the quantity of drugs was small enough that the possession charge only became a felony because of Clay’s prior conviction for a narcotics offense under Michigan law. Id. at 179. Also, much like in White, the court specifically noted that Clay was in a public place with both a gun and drugs on his person, and further had provided an explanation for his presence that did not appear to be plausible on the basis of the facts he gave. Id.
In a more recent case, this court has again found that simple possession is sufficient to uphold application of the four-level enhancement. In United States v. Berkey, 406 Fed.Appx. 938 (6th Cir.2010), a panel of this court affirmed the district court’s application of the enhancement where Ber-key had 16.58 grams of marijuana and a 9mm handgun in his winter coat pocket. Id. at 938-41, 2011 WL 108307 at *1-3. This court explained:
Berkey’s own testimony supplied all of the facts that the district court needed to conclude that the firearm “emboldened the defendant during the felonious conduct.” Carter, 355 F.3d at 925. He acknowledged the accuracy of the facts presented in the presentence report, including that he “claimed ownership of the marijuana and the firearm” and that he “smoked two pipes of marijuana” in the car. PSR ¶ 6. He acknowledged that he had the drugs and pipe in one pocket and the gun in another when he left his house. Taken together, these facts allowed the court to reach the conclusion it did: that “the firearm ha[d] the potential of ... facilitating the felony offense,” R.48 at 25, and that Berkey thus possessed the firearm “in connection with” possession of marijuana, U.S.S.G. § 2K2.1(b)(6).
Id. at 939-10, 2011 WL 108307 at *2. The court added that it “need not probe Ber-key’s psyche to determine whether and how possession of the firearm affected his decision to possess the marijuana,” because it was “enough that it had the ‘potential’ to promote or facilitate the drug offense,” which was “a reasonable inference” in that case. Id.
Thus, this court has upheld application on the enhancement for simple possession of user quantities of drugs, where the gun and drugs are in close proximity, and the defendant is in a public place. Our sister circuits have also come to the same conclusion in factually similar cases. In United States v. Jenkins, 566 F.3d 160 (4th Cir.2009), the Fourth Circuit affirmed application of the four-level enhancement where Jenkins was found by officers, who were responding to a call of shots fired, on a public street with a firearm containing one spent round and one live round of ammunition, and 0.29 grams of cocaine base. Id. at 162. The court explained that it was “clear that the possession of a firearm can facilitate a simple drug possession offense,” because the “firearm can embolden the actor to possess the drugs or provide the actor protection for himself and his drugs, which are likely to be personally valuable even in small amounts.” Id. at 163; see also id. (stating that “when a drug user chooses to carry his illegal drugs out into public with a firearm, there are many ways in which the weapon can facilitate the drug offense and dangerously embolden the offender”) (quoting United States v. Regans, 125 F.3d 685, 687 (8th Cir.1997)). The court then determined that sufficient evidence supported the district court’s finding that the firearm facilitated Jenkins’s possession. Id. at 164. The court pointed out that Jenkins “took the revolver and cocaine onto a public street, near where a gun had recently been fired, close to midnight,” which suggested “that there was a heightened need for protection and that the firearm emboldened Jenkins.” Id. Additionally, Jenkins had the revolver “on his person,” it was loaded, and was “accessible and ready *950 for use,” further suggesting it was there for protection or to embolden Jenkins. Id. According to the court, this was sufficient evidence to find that the simultaneous possession went beyond coincidence.[2] Id.; see also United States v. Simmons, 291 Fed.Appx. 992, 993-96 (11th Cir.2008) (affirming application of the enhancement where Simmons was found on a public street by officers carrying a firearm and a small plastic bag of marijuana, noting that the arresting officer had testified that sometimes individuals would pull a gun on someone trying to rob them of a small amount of marijuana, and that the marijuana was found in the same pocket as the firearm, which established a link between the two and “which might indicate that the gun was possessed for the purpose of protecting the drugs from theft”); Regans, 125 F.3d at 685-87 (holding that application of the four-level enhancement was appropriate where Regans, a passenger in a car stopped for a traffic violation, was found with a pistol in his waistband and 0.29 grams of heroin that he admitted possessing for personal use, explaining that “the drug felon has the ability to use the weapon in connection with his drug offense”).
The majority correctly notes that one circuit has held differently. In United States v. Jeffries, 587 F.3d 690 (5th Cir.2009), Jeffries was stopped while driving in his car, and officers found a firearm on the driver’s seat and a rock of crack cocaine on the floor behind the driver’s seat, which he denied belonged to him. Id. at 691. Nonetheless, the Fifth Circuit acknowledged that the potential for facilitation could be present in simple possession cases, but found in that case that the application of the enhancement was inappropriate because the district court had made no finding of facilitation and the facts were “too sparse” to find that the gun emboldened Jeffries. Id. at 695.
Here, it is difficult to conclude that the application should not apply, as the facts cannot be described as “sparse,” as in Jeffries. Though the majority makes much of the fact that the quantity of drugs was small, this fact alone does not make McKenzie’s possession of the gun in connection with his possession of the drugs “implausible on its face,” as the majority concludes. See White, 144 Fed.Appx. at 489 (upholding application of the enhancement for possession of 0.3 grams of cocaine). The facts of this case contradict the majority’s conclusion that there “simply is no evidence apart from mere proximity to connect the presence of the firearm in McKenzie’s car with his possession of 1.1 grams of marijuana.” According to the PSR, McKenzie was driving on a public road with a firearm in the console to his right and a small bag of marijuana on the arm rest of the door to his left. Thus, the firearm was in close proximity to the drugs and to McKenzie, and both were in plain view. Also significant is that, unlike the unloaded firearm in White (which was sufficient for the court to find that White intended to protect his 0.3 grams of cocaine), McKenzie’s firearm was both loaded and easily accessible for protection. Cf. United States v. Coleman, 627 F.3d 205, 212, 214 (6th Cir.2010) (holding that the four-level enhancement was applicable to Coleman where he possessed drugs and only ammunition without a gun, because “the ammunition emboldened Coleman in the knowledge that he was one step closer to having a fully-loaded firearm to protect himself and his illegal drugs, and the ammunition potentially served notice to potential buyers that Coleman was a step closer to having a fully-loaded firearm”). McKenzie even admitted that he had the gun for protection; he reported to the *951 probation officer that he feared for his life and had been shot at earlier in the day, and that is why he had the gun. Although the majority attempts to dismiss this fact as irrelevant, because McKenzie “feared for his life, not that someone would steal a baggie of pot from his car,” it seems unreasonable that McKenzie would use the firearm to protect himself, but not the drugs he possessed. Additionally, as other courts have held, it is reasonable to find that carrying a firearm would embolden an individual’s possession of even a small quantity of drugs, because the drugs are personally valuable to a user of such substances. Moreover, McKenzie was driving with another individual when he was stopped by police, further supporting the conclusion that the firearm emboldened his possession and potentially facilitated that possession by preventing theft of the marijuana. The majority points out that, according to the PSR, McKenzie had been arrested previously for smoking a joint in public (in actuality, McKenzie was in the driver’s seat of a vehicle located at a park), but had no firearm on him at the time. However, McKenzie had been arrested pri- or to that occasion with seven rocks of crack cocaine and a loaded Smith & Wesson .38 caliber revolver. Additionally, the PSR also states that, when McKenzie was pulled’over in this case, officers noted “an odor of marijuana emanating from the vehicle.” Although the PSR does not state whether any additional evidence of marijuana use specifically by McKenzie was found, it is worthy of note, in light of the majority’s argument and the relatively small quantity found in the plastic bag when the vehicle was pulled over.
Ultimately, there is not an overabundance of evidence here, but that is not what is required. The firearm need not actually be used in the commission of the felony; it must only have “the potential to promote another felony offense.” United States v. Angel, 576 F.3d 318, 320 (6th Cir.2009) (quoting United States v. Heighten, 272 Fed.Appx. 469, 472 (6th Cir.2008)). And, “demonstrating this nexus [under § 2K2.1(b)(6) between the gun and the drugs] is not a particularly onerous burden.” United States v. Davis, 372 Fed.Appx. 628, 629 (6th Cir.2010). Although the government must satisfy the preponderance standard, “this simply requires that the possession of the firearm cannot be the result of accident or coincidence.” James v. United States, 217 Fed.Appx. 431, 438 (6th Cir.2007). All that the government must show is that a preponderance of the evidence demonstrates the firearm’s potential for facilitation of the marijuana possession, and on the basis of the facts in this case, the government has met its burden. Contrary to the majority’s conclusion, I believe that it is evident that “the facts here go beyond mere proximity.” Berkey, 406 Fed.Appx. at 940, 2011 WL 108307, at *2. As a result, I would find that the district court did not err in applying the four-level enhancement to McKenzie’s base offense level, and I would affirm McKenzie’s sentence.

. Unlike this circuit, the Fourth Circuit used the clear error standard of review.